Argued October 17; modified December 31, 1929

EDITH F. GOODE *v.* R. Z. DUKE

(283 Pac. 34)

For appellant there was a brief over the names of *Messrs. McKenzie & McKenzie* and *Messrs. Manning & Harvey* with an oral argument by *Mr. John Manning*.

For respondent there was a brief over the name of *Messrs. Clark, Skulason & Clark* with an oral argument by *Mr. B. G. Skulason*.

BEAN, J. This is a suit instituted by the plaintiff, Edith F. Goode, against defendant, R. Z. Duke, to reform a contract executed by them for the operation of plaintiff's hotel Hoyt in Portland, and for an accounting under the contract. The plaintiff was to receive a certain percentage of the gross income from the hotel with a certain fixed minimum. The court decreed a reformation of the contract so as to include a portion which had been omitted by mistake.

An accounting was rendered by the defendant and the court found the percentage of the gross business which the defendant should pay the plaintiff for the months of June to September, both inclusive. The court also found that the defendant, under the contract, should pay plaintiff for the taxes $2,085.55, which percentages and taxes due from defendant to plaintiff amounted to the total sum of $11,118.56, subject to certain credits and set-offs. These findings and figures, made by the court, are not questioned or objected to at this stage of the case.

The court also found that the defendant is entitled to credits and set-offs against said amounts as follows:

"Damages for cancelling contract ........$5,000.00
Replacements and improvements
   upon said hotel ................................ 4,180.89
Payment on mortgage on said
   hotel, August 18, 1927 .......................... 1,532.92
Fifty-five per cent of the amount of
   $164.50 collected by the plaintiff
   from the S. P. Ry Co., Sept. 1927     90.47
   Total ................................................$10,804.28,''

leaving a balance of $314.28 that the plaintiff should recover from defendant. From this decree the plaintiff appeals as to the items of counter-claim, or set-offs, namely, damages for cancelling contract, $5,000.00; replacements and improvements on hotel, $4,180.89; totaling, $9,180.89. These items constitute the amount involved upon this appeal.

The contract in regard to the lease of the hotel, which was to run from the date thereof, December 29, 1925 to May 12, 1935, is set forth as an exhibit to the complaint.

The defendant alleges in his answer, after denying a portion of the complaint, in substance, that under and by virtue of the contract the defendant operated the Hoyt hotel and the property described in the agreement from the 29th day of December, 1925, to and including September 14, 1927, and that he had paid out for the use of plaintiff $7,441.22 in excess of all sums due plaintiff from defendant under the agreement. Defendant also avers that shortly prior to September 14 plaintff, wrongfully and without legal cause or justification,

"terminated and repudiated said agreement and so notified the defendant and demanded that he forth-

with quit and surrender the said property and premises and thereupon commenced litigation against the defendant to compel him to vacate and quit said premises. That by reason of the wrongful termination and repudiation of said agreement by the plaintiff the acts and conduct of the said plaintiff, the defendant was deprived of the use and enjoyment of said premises and property and required to quit and surrender the same, all to his great damage'' in the sum of $10,700.

Issue was joined by the reply.

It appears that Mrs. Goode left the city of Portland for the East soon after the contract was signed, where she remained for some time. In addition to the percentages of the gross receipts from the hotel, which were to be paid plaintiff, defendant Duke was to pay $1,000 of the taxes ''levied upon the real property each year, beginning with the year 1925 and continuing during the terms of the agreement,'' and was to pay all of the taxes on the personal property of the hotel during said period, and ''for the purpose of insuring and guaranteeing the faithful carrying out and performance of the conditions in this contract that the party of the second part (Duke) was to furnish a bond to the party of the first part in the sum of $10,000, said bond to be approved by the party of the first part.''

Mr. Duke had been operating the Hoyt hotel under a temporary agreement from May 12, 1925, up to the time of the contract of December 29, 1925. This appears to have caused some confusion in regard to the payment of taxes, as for instance, whether they should be for the taxes paid during the year 1926, or for the taxes that were levied during 1926. This, however, makes no material difference, as the matter is settled by the decree of the lower court.

Mr. Duke made reports to Mrs. Goode of the gross business of the hotel and of the amount of percentage due her for each of the months up to June, 1927. A bond was furnished, as provided by the contract, for the first year, running to May 18, 1926. The premium therefor was paid by Mrs. Goode and when the bond expired it was not renewed until May 17, 1927.

In his reports to Mrs. Goode, Mr. Duke included $1,065.55 and $1,190.00 as the amounts which he had paid for taxes on the property. It appears, however, that checks for the same in favor of T. M. Hurlburt, sheriff of Multnomah county, were mailed to "F. M. Hurlburt" and followed a man by that name for some time and were then sent to the dead letter office and returned to defendant Duke in July, 1927.

Mrs. Goode, on learning that the taxes had not been paid, as stated in the report, and being informed that the bond of defendant running from May 18, 1926, had not been issued, caused her attorneys in Chicago on June 11, 1927, to write defendant the following letter:

"We represent Edith F. Goode, with whom you have a contract dated December 29, 1925, for the management of the Hoyt hotel, and have been asked by Mrs. Goode to take up with you the disposition and cancellation of this contract. You are hereby notified that this contract is declared at and end and terminated. This is done not at the election of Mrs. Goode, as provided in the contract, but on account of your failure to live up to your part of this agreement. In many respects you have failed to render the services which you agreed to render. You have likewise failed and apparently refused to post a bond in the sum of $10,000 to be approved by Mrs. Goode. We understand further that you have not devoted your entire time in the interests of the Hoyt hotel, and we believe all parties concerned will be better satisfied if some other arrangements were made for the management of the hotel.

"We hope you will see fit to withdraw from your activities at the hotel. We believe that 10 days time from the receipt of this letter is sufficient in which to receive a response from you, and request that we hear from you within that time.

"If we do not hear from you it will probably be necessary for us to take other steps for your removal."

Nothing appears to have been done in regard to terminating the lease or dispossessing defendant, as the matter is understood to have been explained and a second bond was furnished on May 18, 1927, and Mr. Duke continued in possession and operated the hotel, but did not pay the plaintiff or make monthly reports, for the months of June, July, August and up to September 14, 1927.

The contract contained the provision:

"The party of the first part reserves the right to cancel and terminate this agreement at any time, and if so terminated for causes other than those binding upon the party of the second part, the said party of the first part shall pay to the party of the second part the sum of five thousand dollars in lawful money of the United States, which five thousand dollars shall be considered as liquidated damages in full."

In September, Mrs. Goode brought an action for forcible entry and detainer, which action was settled by defendant's delivery of the possession of the hotel property at midnight on September 14, 1927. The terms of the agreement of that date recited that Duke, the lessee, while denying a breach of the lease, yields possession under protest and without prejudice to any of his rights of defense, and the lessor, Goode, accepts and takes over possession of the leased property without prejudice to any claim or right of action that she may have. Thereafter this suit was instituted on September 19, 1927.

Plaintiff assigns error of the trial court: First, in finding that the defendant was entitled to $5,000, or any other sum, for damages for the termination of the contract; second, in finding that the defendant was entitled to $4,180.89, or any other sum, for replacements and improvements upon the Hoyt hotel; third, that the relief granted by the decree is inconsistent with the findings.

In regard to repairs, etc., of the hotel, the lease contains the following provision:

"That during the whole term of this agreement, the said second party will at all times, at his own cost and expense, keep the said premises, including the plumbing, electric wiring, glass, hardware, inside walls, ceilings and floors, also radiators, and the furniture, fixtures, and all of the personal property within the said premises, in good repair and tenative condition, and in first class order, at his own expense."

This stipulation requires the defendant, in as plain language as can be written, to keep the premises in good repair and also the furniture in first class order at his own expense. It was clearly the intention of the parties, when they made this contract, that Mrs. Goode would not be required to make or pay for repairs, or replacements of the furniture, or personal property of the hotel.

The agreement also contained a provision for a certain percentage or compensation, to be paid by the defendant Duke to Mrs. Goode as rental, and if the same

"be in arrears for the space of thirty (30) days, or if the second party shall fail to perform or observe any or either of the terms to be performed or observed, then and in either of said cases the said first party, or those having her estate in the premises, lawfully may immediately or at any time thereafter, and without further notice or demand, enter into and upon the said

premises or any part thereof in the name of the whole, and repossess the same as of her former estate and expel said second party or those claiming under him, forcibly if necessary, if the party of the first part so desires, without being taken or deemed guilty in any manner of trespass, and without prejudice to any of the remedies or preceding breach of covenants.''

The agreement also contains the following stipulations:

''It is agreed by and between the parties hereto that the party of the first part may at any time have the privilege of selling said property, and in case said party of the first part may have an opportunity of selling said property, she is to give the party of the second part six months' notice in writing, or in lieu thereof $5,000 in lawful money of the United States. Either of the above to be optional with the party of the first part or her heirs or assigns as her or their interests may appear, and it is further agreed that in case the party of the first part has an opportunity of selling the said property as hereinbefore stated, that she is immediately to give notice of such proposed sale to the party of the second part herein, and he is to have the opportunity and privilege of purchasing the said property under the same terms and conditions and for the same price as the party of the first part is offered by any third party, and the party of the second part herein is to have a period of ten (10) days from said notice to accept or reject the right to purchase said hotel, said sale of said hotel property is to include all personal property contained herein.

''It is further agreed that in the event that at any time it may become necessary, on account of termination of this agreement or on any account, to place a valuation upon any personal property placed in said hotel, or upon any improvements made to said hotel property, done and made at the expense of the said party of the second part, the method of determining said value shall be as follows:

''The value shall be the actual cost as determined by the invoices, showing the amount paid for such

property or improvements, less depreciation based on tables of depreciation allowed by the United States Government Internal Revenue Department.''

. The defendant bases his claim, for the value of replacements and improvements upon the hotel, upon the two last clauses quoted.

It was the contention of defendant, at the time of the argument, that Mrs. Goode breached the contract by virtue of the letter of June 11, 1927. The allegation in the answer in regard to the breach is to the effect, that shortly prior to September 14, 1927, plaintiff repudiated the agreement and notified defendant and demanded that he quit the premises ''and thereupon commenced litigation against the defendant to compel him to vacate and quit the premises''; that by reason thereof defendant was deprived of the use and enjoyment of the property.

■ This allegation unquestionably refers to the time Mrs. Goode instituted ouster proceedings in September and not to the letter which her attorneys wrote from Chicago. However, considering that the claim is responsive to the allegations of the answer, we think the contention is unfounded for at least two reasons: One, at the time the letter was written Mr. Duke was in default for the following amounts: one check for $1,000 and one for $65.55 and one for $1,190. These amounts constituted a part of the rent reserved in the lease. Whether they were taxes that Mr. Duke was to pay for Mrs. Goode and charge her account, or whether a portion thereof was the share of the taxes amounting to $1,000 annually to be paid upon the real estate, and all of the taxes on the personal property, it was all a part of the rent. During the time the checks were going to the dead letter office by devious routes and returning to the defendant July, 1927, he knew that

the checks were out. About every month his book-keeper noted the fact. He made no inquiry of the sheriff's office, which was in the city, in regard to taxes or checks. When the checks were returned he did not then pay the amount to the sheriff or to Mrs. Goode. About that time Mrs. Goode paid the taxes herself. Rent can not be paid by excuses. Duke was in default at the time the letter was written and Mrs. Goode had the legal right to terminate the contract without considering the question of his failure to give a bond, which might be deemed somewhat differently than a question of rent.

■ Secondly, the letter from Mrs. Goode's attorney was evidently written for the purpose of spurring Mr. Duke to live up to his contract. The contract was not terminated. He was not dispossessed at that time. No attention was paid to the letter except that he furnished the bond and made some explanation.

■ The actual termination of the contract of lease occurred in September, 1927, when defendant was in default in the sum of $8,313.01 in percentages, or rent, due Mrs. Goode for the premises under the contract and also, as found by the trial court, $2,805.55 taxes, which is not now questioned, and which defendant was to apply as a portion of the rent under the lease. The testimony does not show, and the facts do not warrant the finding that Mrs. Goode breached the contract. Therefore, the defendant is not entitled to the item of $5,000 in the account for "damages for cancelling the contract," as found by the trial court, or otherwise.

■ The finding was based upon the following stipulation in the contract:

"The party of the first part reserves the right to cancel and terminate this agreement at any time, and if so terminated for causes other than those binding

upon the party of the second part, the said party of the first part shall pay to the party of the second part the sum of five thousand dollars in lawful money of the United States, which five thousand dollars shall be considered as liquidated damages in full."

This stipulation means simply that if Mrs. Goode, during the term of the lease, should terminate the same or breach the contract, she should pay the liquidated damages. In no event could she be liable for a breach caused wholly by the defendant.

Plaintiff assigns error of the court in finding that the defendant was entitled to $4,180.89, or any sum, for replacements and improvements upon the Hoyt hotel. The clause of the contract in regard to the repairs and keeping the premises and fixtures and personal property in first-class order during the term of the lease, plainly provides that this all should be done by Mr. Duke "at his own cost and expense," and the defendant can not recover for such repairs and replacements.

■ This plain stipulation was not annulled or modified by the later provision in the contract quoted above.

The only application the later quoted provision could have, as far as we see, would be in the event of the destruction of the property by fire, or in some manner, or that the plaintiff should terminate the lease upon the sale of the property, or for cause other than those binding upon Duke, or at a time so near the end of the term of the lease, or under such conditions, that the provision for liquidated damages would be treated as a penalty. The provision was not intended to require the lessor to pay for repairs or replacements and the item in the account allowed to defendant by the trial court for "replacements and improvements upon said hotel, $4,180.89," must also be eliminated from that side of the account.

The decree of the lower court will be modified accordingly, making a decree in favor of plaintiff for the sum of $11,118.56, less the other two items credited defendant in the amount of $1,623.39, making the amount plaintiff should recover of defendant $9,495.17, together with interest at the rate of 6 per cent per annum from the 20th day of August, 1928.

■ The defendant, in claiming that there is no breach of contract on his part, contends, as stated in his brief, "that plaintiff had no right to rescind the contract since the breach, if any by the defendant was of an independent and subordinate covenant, and the plaintiff's only remedy is compensation in damages." Citing: *Kauffman v. Raeder,* 108 Fed. 171 (47 C. C. A. 278, 54 L. R. A. 247) ; *Howe v. Howe, etc., Co.,* 154 Fed. 820 (6 R. C. D., p. 926) ; 13 C. J., 613, 615; *Inland Const. Co. v. Pendleton,* 116 Or. 668, 676 (242 P. 842).

If this contention were made by reason of the failure of defendant to furnish the required bond, or some similar provision of the contract, it would stand upon an entirely different footing than it does when the defendant is in default for a large payment of rent of the premises.

The defendant, in making the repairs and replacements, evidently did so in the expectation that he would abide by the terms of the lease and occupy the hotel during the full term of the lease. That he did not do so was occasioned by his own acts and was not the fault of the plaintiff.

The decree of the lower court will be modified in accordance herewith.

BELT and BROWN, JJ., absent.